IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOMINIQUE M. ANDERSON,

Plaintiff,

v.

NOVUSPOINT, INC., a Delaware corporation;

EQUITUS CORPORATION, a Delaware corporation; and

ROBERT E. GUIDRY, individually,

APR 10 2026 PM 12:20
FILED - USDC - FLMD - TPA

Defendants.

Case No. 8:26-cv-1048-SDM-CPT

## COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF
### JURY TRIAL DEMANDED

### INTRODUCTION

This is an action by Plaintiff Dominique M. Anderson ("Anderson") against her former employers NovusPoint, Inc. ("NovusPoint") and Equitus Corporation ("Equitus"), and their controlling officer Robert E. Guidry ("Guidry"), arising out of their failure to pay Anderson her wages and benefits, their retaliatory discharge of Anderson, and their failure to provide required COBRA continuation coverage. Anderson brings her FLSA claims individually and on behalf of all similarly situated executives who were subjected to Defendants' policy and practice of forced pay forfeiture and retaliatory termination across Equitus subsidiaries, pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b). Anderson seeks monetary damages, back wages, liquidated damages, statutory penalties, injunctive relief, and a declaratory judgment that Defendants have waived their right to compel arbitration.

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) over Anderson's claims arising under the FLSA, 29 U.S.C. § 201 et seq., and ERISA/COBRA, 29 U.S.C. § 1001 et seq. and 29 U.S.C. § 1132. This Court has supplemental jurisdiction over Anderson's state-law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in the Middle District of Florida, Tampa Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in Pinellas County, Florida, and because the Executive Employment Agreement designates this Court as the proper forum for disputes between the parties. See Agreement § 13.

### PARTIES

$405
TPA 74/070

3. The Plaintiff, Anderson, is an individual residing in Tampa, Florida. At all times material to this action, Anderson was employed by NovusPoint as Executive Vice President and, following her 90-day probationary period, as President of NovusPoint, pursuant to a written Executive Employment Agreement effective April 25, 2023 ("Agreement"). See Exhibit 1. On or about February 2024, Anderson's title was elevated to President of Equitus Enterprise, the commercial arm of Equitus Corporation. This title change was acknowledged by CEO Guidry and the entire company, published on the company website, reflected on company-issued business cards, and published on Anderson's professional LinkedIn profile. Anderson's email communications to Guidry and colleagues during this period confirm her title and expanded role (to be produced in discovery).

4. Defendant NovusPoint, Inc. ("NovusPoint") is a Delaware corporation that conducted business in Florida at 2170 Rainbow Drive, Clearwater, Florida 33765. On May 7, 2025, NovusPoint withdrew from Florida and appointed the Florida Department of State as its statutory agent for service of process pursuant to Fla. Stat. § 48.181.

5. Defendant Equitus Corporation ("Equitus") is a Delaware corporation authorized to do business in Florida, with its principal place of business at 5380 Tech Data Drive, Suite 101, Clearwater, Florida 33760. Equitus is the parent and majority shareholder of NovusPoint. Equitus is jointly and severally liable for all obligations of NovusPoint under the Agreement, as expressly stated therein: "Equitus Corporation, the majority shareholder of the Company, hereby agrees to be jointly and severally liable for all of the Company's obligations under the foregoing Executive Employment Agreement."

6.     Defendant Robert E. Guidry ("Guidry") is an individual residing at 1615 St. Pauls Drive, Clearwater, Florida 33764. At all times material to this action, Guidry served simultaneously as Founder and Chairman of Equitus and as President and Chairman of NovusPoint, executing the Agreement on behalf of both entities. Guidry exercised total operational control over all employment decisions affecting Anderson, including hiring, compensation, and termination, making him individually liable as an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d). See *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008). Guidry is personally liable for the debts of the corporate defendants because he exerted substantial control over them and personally determined not to pay Anderson. Guidry may be served at his personal residence.

## EQUITUS IS LIABLE FOR NOVUSPOINT'S OBLIGATIONS

7. Equitus is directly and contractually liable for all obligations owed to Anderson by reason of its express joint and several liability undertaking on the face of the Agreement.

8.     Further, at all times material to this action, NovusPoint and Equitus constituted a single integrated enterprise and/or alter ego for purposes of liability under the FLSA, ERISA, and COBRA. NovusPoint and Equitus meet the Eleventh Circuit's four-factor single employer test: (1) interrelation of operations — NovusPoint employees used Equitus's email, payroll, and benefits systems, and the Agreement provided that benefits would be administered through Equitus; (2) common management — Guidry served simultaneously as Chairman of both entities; (3) centralized control of labor relations — HR, payroll, and COBRA obligations were administered by Equitus; and (4) common ownership — NovusPoint is a wholly owned

subsidiary of Equitus. See *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1341 (11th Cir. 1999). Each Defendant is jointly and severally liable for the obligations of the others.

## FACTUAL ALLEGATIONS

9. On or about April 25, 2023, Anderson and NovusPoint entered into the Agreement, signed by Guidry as Chairman of NovusPoint and separately as Chairman of Equitus, which expressly undertook joint and several liability for all of NovusPoint's obligations. See Exhibit 1.

10. Following a 90-day probationary period, Anderson's base salary was $150,000 per year. The Agreement also provided for: (i) a monthly bonus equal to 1% of gross monthly revenue; (ii) a capital raise bonus of 1% of net proceeds; (iii) common shares representing 1% of NovusPoint's outstanding shares, vesting over 24 months; (iv) participation in Equitus's stock option and award plans; and (v) D&O insurance coverage.

11. Anderson properly, diligently, and competently performed all duties required of her under the Agreement and otherwise fulfilled her obligations thereunder, devoting her full professional efforts to NovusPoint's mission as directed by Guidry.

12. Defendants failed to pay Anderson all compensation owed under the Agreement, including earned base salary which Defendants unilaterally withheld beginning in June/July 2024 without Anderson's consent. During this period, Guidry verbally represented to Anderson that "we have plenty of money and we are going to pay you" and that contracts were coming in and Anderson would be paid. These representations were false. Defendants were deliberately withholding Anderson's earned wages at the very time Guidry made these statements. Guidry sent written apology emails to employees on Fridays when payroll was not met as promised, acknowledging the nonpayment (to be produced in discovery). Guidry also sent a company-wide written email expressly acknowledging that executive payroll was being withheld while non-executive employee payroll would be paid, demonstrating that the nonpayment was deliberate and targeted rather than the result of company-wide financial hardship (to be produced in discovery). Anderson reasonably relied on Guidry's verbal representations by continuing to devote her full professional efforts to Defendants' benefit. Defendants also failed to pay severance required by Section 6(e), including 12 months of continued base salary at $150,000 per annum, accrued incentive compensation, and accelerated vesting of unvested equity. On September 9, 2024, Equitus COO Chasiti Avina acknowledged in writing that the company owed Anderson $28,038.46 in deferred compensation (to be produced in discovery).

13. On or about August 27, 2024, Guidry called Anderson into his office and demanded she sign a Deferred Compensation Agreement that would have superseded the Agreement and extinguished her rights to wages and severance. When Anderson refused to sign, Guidry informed her in that same meeting that she was being terminated effective Friday, September 6, 2024, due to her non-compliance in signing the Deferred Agreement. Anderson was terminated effective September 6, 2024 — a date Guidry announced in the same meeting in which Anderson refused to sign, with no intervening events or alternative explanation offered for the termination.

14. In August 2024, prior to Anderson's termination, Guidry sent a company-wide email to all employees representing that renewed contracts were expected to arrive in mid-September 2024 and that these contracts would sustain the company's ability to continue paying employees (to be

produced in discovery). This representation was made while Guidry was simultaneously withholding executive payroll and while Anderson was being pressured to sign the Deferred Agreement. On August 30, 2024 — three days after the August 27 meeting in which Guidry announced Anderson's termination — Daniel May, the project manager at Convee (a separate Equitus subsidiary) responsible for managing the VA contract, confirmed in writing that pricing had been submitted to the VA that week for a 2-year 9-month contract renewal expected to commence mid-September 2024 (to be produced in discovery). On September 7, 2024 — one day after Anderson's termination — Equitus COO Chasiti Avina independently confirmed to Anderson that the VA renewal was coming in the following week. On September 9, 2024, May further confirmed in writing that the VA contract was worth approximately $100,000 per month for 33 months — totaling approximately $3,300,000 in contract revenue — that the purchase order was expected the week of September 14, 2024, and that the new contract was set to commence on September 17, 2024 (to be produced in discovery). Guidry terminated Anderson on September 6, 2024 — eleven days before $3,300,000 in contract revenue was set to arrive. Anderson's total outstanding compensation of approximately $183,000 represented less than six percent of that incoming contract value. Guidry had the means to satisfy his obligations to Anderson. He chose not to. This was not financial hardship — it was deliberate deprivation.

15. Anderson was the only female executive at the subsidiary level. During Q3 2024, Guidry and company leadership made multiple investor presentations in which Anderson was deliberately excluded — both from the meetings themselves and from presentation slides identifying the Equitus executive team. All male executive counterparts were included and introduced. Anderson's name, title, and role as President of Equitus Enterprise — the commercial arm of the company, publicly identified as such on the company website and on company-issued business cards — were omitted entirely. This deliberate exclusion of the only female executive from multiple investor-facing presentations constitutes a pattern of discriminatory marginalization (to be produced in discovery).

16. The pattern of forced executive pay forfeiture and retaliatory termination was not limited to Anderson. At least four other executives across at least four separate Equitus subsidiaries were subjected to the same conduct by Guidry: (i) a male General Manager at a separate Equitus subsidiary was terminated shortly before a purchase order was received for a contract he had personally developed, purportedly for insubordination after he refused to misrepresent product capabilities to a customer — his dismissal, like Anderson's, was announced immediately upon his refusal to comply with a Guidry directive and occurred just before significant contract revenue arrived; (ii) the former President of Convee, a separate Equitus subsidiary, was forced to forego earned executive compensation against his will and ultimately departed as a result; and (iii) at least two additional executives at two further separate Equitus subsidiaries were forced to forego earned compensation against their will and departed as a result of Guidry's nonpayment directives. Anderson is personally aware of each of these individuals and their circumstances. This pattern of conduct — affecting at least five executives across at least five Equitus subsidiaries, all directed by Guidry as the controlling officer of the Equitus corporate family — constitutes a deliberate and systematic scheme to deprive executives of earned compensation while retaining the operational benefit of their services, and establishes that Defendants' violations of the FLSA were willful and part of a regular practice rather than an isolated occurrence.

17. Anderson's termination was in direct retaliation for her refusal to waive her contractual and statutory rights. Guidry announced Anderson's termination date in the same meeting in which she refused to sign the Deferred Agreement, citing her non-compliance as the reason. The temporal proximity is unambiguous — the termination was announced immediately upon Anderson's refusal, with no intervening events, no performance-related explanation, and no other stated basis for the termination.

18. On July 15, 2025, Guidry acknowledged from his Equitus email account that an obligation to Anderson existed but nonetheless failed and refused to authorize payment.

19. Guidry stated to Anderson via email on July 16, 2025: "I am retiring, so I don't really give a crap what happens to you."

20. Guidry stated to Anderson via email on July 16, 2025: "This will be settled in 2026 and under someone else's watch and I will long be gone and you can deal with corporate people."

21. The total amount Anderson is entitled to under the Agreement is no less than $300,000, including $30,000 in unpaid back pay, $3,000 in unreimbursed business expenses, and $150,000 in contractual severance, plus accrued interest, liquidated damages, and the value of unvested equity.

22. Prior to Anderson's termination, Equitus failed to remit required health insurance premium payments to United Healthcare from approximately July 1 through September 30, 2024, causing Anderson's coverage to lapse without notice. On September 12, 2024, Anderson was required to self-pay for a medical appointment when her insurance was rejected as invalid. Following her termination, Defendants failed to provide any COBRA election notice as required by law.

## PROCEDURAL HISTORY

23. The parties engaged in and completed JAMS mediation as required by the Agreement, which was unsuccessful. JAMS then commenced arbitration (Ref. No. 5460001439) and issued Defendants a $7,500.00 retainer invoice (Invoice No. 7537688). See Exhibit 2. Defendants appeared through counsel and filed an Answer and Affirmative Defenses on January 28, 2025, in which they expressly admitted the governing arbitration clause, admitted venue in the Middle District of Florida, and admitted the filing fee structure- confirming their full participation in and acceptance of the JAMS proceeding. See Exhibit 3. Defendants paid nothing toward the required retainer. On June 6, 2025, JAMS issued a Notice of Administrative Stay to all parties confirming that Defendants had still not paid the required retainer, placing the matter on administrative stay, and providing Defendants a final deadline of July 6, 2025 to remit full payment or face closure of the file. See Exhibit 4. Defendants paid nothing. JAMS closed the file on July 6, 2025. See Exhibit 5. By demanding arbitration, appearing through counsel, filing a substantive Answer, and then refusing to fund the proceeding, Defendants waived any right to arbitrate.

24. On February 11, 2026, Anderson filed a Wage Theft and Retaliatory Discharge Complaint with the Florida Department of Economic Opportunity documenting Defendants' wage theft, retaliatory discharge, and coercion in violation of Florida Statutes §§ 448.01 and 448.08 (to be produced in discovery).

## COUNT I — BREACH OF CONTRACT

## COUNT I — BREACH OF CONTRACT

### (Against All Defendants)

25. Anderson realleges and incorporates by reference all preceding paragraphs.

26. Anderson performed all obligations required of her under the Agreement. NovusPoint and Equitus breached the Agreement by failing to pay Anderson her salary, incentive compensation, severance, equity, and legal fee reimbursement, and by failing to pay the required JAMS arbitration fees. Anderson has suffered damages of no less than $183,000 plus the value of unvested equity, pre- and post-judgment interest, attorney's fees as provided by the Agreement, and costs.

## COUNT II — UNJUST ENRICHMENT

### (Against All Defendants — Pled in the Alternative)

27. Anderson realleges and incorporates by reference all preceding paragraphs.

28. In the event the Court determines the Agreement is unenforceable, Anderson brings this alternative claim. Anderson conferred a valuable benefit upon Defendants by rendering approximately 17 months of executive professional services. Defendants accepted and retained that benefit without fully compensating Anderson therefor. It would be inequitable for Defendants to retain such benefit without payment of its reasonable value.

## COUNT III — FRAUD

### (Against All Defendants)

29. Anderson realleges and incorporates by reference all preceding paragraphs.

30. Defendants, by and through Guidry and others, repeatedly represented to Anderson that she would be compensated in full pursuant to the Agreement. Specifically, Guidry verbally represented to Anderson that "we have plenty of money and we are going to pay you" and that contracts were coming in, while simultaneously withholding Anderson's earned salary beginning in June/July 2024. Guidry sent a company-wide email in August 2024 representing that mid-September contract renewals would sustain the company's ability to pay employees, yet terminated Anderson on September 6, 2024 — eleven days before $3,300,000 in contract revenue arrived (to be produced in discovery). These representations were false and were made knowingly, with intent to induce Anderson to continue performing her executive duties for Defendants' benefit without receiving the compensation she was owed. Defendants further demonstrated their fraudulent intent through: (i) their systematic withholding of executive salary while paying non-executive employees (to be produced in discovery); (ii) their preparation of the Deferred Agreement to retroactively eliminate Anderson's rights; (iii) their presentation of a Separation Agreement targeting Anderson's FLSA, ERISA, and COBRA claims for release; and (iv) Guidry's written apologies for missed payroll made contemporaneously with verbal assurances of payment (to be produced in discovery). Anderson reasonably relied on these representations by continuing to devote her full professional efforts to Defendants' benefit, to her detriment. Anderson demands compensatory damages, punitive damages, attorney's fees, and costs.

## COUNT IV — FLSA RETALIATION

### 29 U.S.C. § 215(a)(3) — (Against All Defendants)

31. Anderson realleges and incorporates by reference all preceding paragraphs.

32. Anderson's termination on September 6, 2024 was in direct retaliation for her refusal to waive her rights under the FLSA. The causal connection is direct and unambiguous: Anderson was terminated in the same meeting in which she refused to sign the Deferred Agreement, with no intervening events. Defendants are liable for lost wages, liquidated damages, reinstatement or front pay, attorney's fees, and costs pursuant to 29 U.S.C. § 216(b).

## COUNT V — FLSA UNPAID WAGES

### 29 U.S.C. § 201 et seq. — (Against All Defendants)

33. Anderson realleges and incorporates by reference all preceding paragraphs.

34. Defendants failed to pay Anderson all wages earned and due under the FLSA. Defendants' unilateral withholding of Anderson's guaranteed salary beginning in June/July 2024 violated the salary basis requirement of 29 C.F.R. § 541.602(a), defeating any claimed exemption. Defendants' conduct was willful within the meaning of 29 U.S.C. § 255(a), as evidenced by: (i) Avina's written admission that the company owed Anderson $28,038.46 in deferred compensation; (ii) Guidry's written payroll apology emails acknowledging missed payroll obligations (to be produced in discovery); (iii) Guidry's company-wide email expressly acknowledging selective withholding of executive payroll while non-executive employees were paid (to be produced in discovery); and (iv) Guidry's own statement that he "don't really give a crap" what happens to Anderson. Anderson brings this claim on behalf of herself and all similarly situated executives who were subjected to Defendants' policy and practice of forced pay forfeiture across Equitus subsidiaries. Anderson is aware of at least four such individuals employed at separate Equitus subsidiaries who experienced the same forced forfeiture of executive compensation under Guidry's direction and who may wish to opt in to this collective action pursuant to 29 U.S.C. § 216(b). Defendants are liable for unpaid wages, an equal amount as liquidated damages, attorney's fees, and costs pursuant to 29 U.S.C. § 216(b).

## COUNT VI — COBRA / ERISA VIOLATIONS

### 29 U.S.C. §§ 1132, 1166 — (Against All Defendants)

35. Anderson realleges and incorporates by reference all preceding paragraphs.

36. Equitus sponsored and administered a group health plan covering Anderson. Equitus caused Anderson's coverage to lapse by failing to remit required premiums to United Healthcare from approximately July 1 through September 30, 2024. Anderson's termination on September 6, 2024 was a qualifying event under COBRA, 29 U.S.C. § 1163(2). Defendants failed entirely to provide Anderson with any COBRA election notice as required by 29 U.S.C. § 1166(a)(4). Defendants are liable for statutory penalties of up to $110 per day from October 21, 2024 through the date of this Complaint — approximately 535 days — for a maximum of $58,850 (or $117,700 if health and dental/vision plans are separate), plus actual damages including out-of-pocket medical expenses, ACA premium differential, equitable relief, attorney's fees, and costs.

## COUNT VII — DECLARATORY JUDGMENT: ARBITRATION WAIVER

### 28 U.S.C. § 2201 — (Against All Defendants)

37. Anderson realleges and incorporates by reference all preceding paragraphs.

38.     Defendants waived any right to compel arbitration by demanding arbitration, compelling Anderson through JAMS mediation, filing a substantive Answer (Exhibit 3), and then refusing to pay the mandatory $7,500.00 JAMS retainer (Invoice No. 7537688, Exhibit 2), causing JAMS to place the matter on administrative stay on June 6, 2025 (Exhibit 4) and close the file on July 6, 2025 (Exhibit 5). A party that demands arbitration and then fails to fund it waives the right to arbitrate. See *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024). Anderson seeks a declaratory judgment that: (a) Defendants have waived their right to compel arbitration; (b) this Court has jurisdiction over all claims herein; and (c) Anderson is not required to re-initiate or fund any arbitration proceeding before pursuing her claims in this Court.

## CLAIM FOR INJUNCTIVE RELIEF

### (Against All Defendants)

39. Anderson realleges and incorporates by reference all preceding paragraphs. Anderson has a high likelihood of success on the merits. NovusPoint has admitted insolvency and ceased operations. Guidry disclosed approximately $5 million in corporate debt and stated his intention to retire and transfer responsibility. Without injunctive relief, Anderson is unlikely to achieve a meaningful recovery. Anderson therefore seeks: (a) an order that each Defendant disclose all assets of every name or nature, sworn under oath; and (b) an order that Defendants not dissipate, transfer, or encumber any assets until all amounts owed to Anderson are paid in full.

## PRAYER FOR RELIEF

WHEREFORE, Anderson respectfully requests that this Court enter judgment in her favor and against each Defendant, jointly and severally, and award:

(a) All monetary damages to which Anderson is entitled, including unpaid wages, severance of no less than $150,000, value of unvested equity, liquidated damages, statutory penalties, punitive damages, and pre- and post-judgment interest;

(b) Injunctive relief as set forth above;

(c) A declaratory judgment that Defendants have waived arbitration and that this Court has jurisdiction over all claims;

(d) Authorization to send court-approved notice to all similarly situated executives who were subjected to Defendants' policy and practice of forced pay forfeiture across Equitus subsidiaries, and all damages owed to any such individuals who opt in to this collective action pursuant to 29 U.S.C. § 216(b);

(e) Reasonable attorney's fees and costs under all applicable statutes and contractual provisions; and

(f) Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Anderson hereby demands a trial by jury on all issues so triable.


Respectfully submitted,


**DOMINIQUE M. ANDERSON**

*Pro Se*

905 E. McBerry Street

Tampa, Florida 33603

(617) 699-5604

ddicarloanderson@gmail.com

Dated: April 9, 2026